IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THE AF1 EXHIBIT LLC and<br>485EV ASSETS, LLC | * |
| | * |
| *Plaintiffs*, | * |
| | * |
| v. | Civil Action No. RDB-24-192 |
| | * |
| NH SPECIAL EVENTS, LLC, | * |
| | * |
| *Defendant*. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Presently pending in the above-captioned case are two motions (ECF Nos. 11, 25) filed by Defendant NH Special Events, LLC ("Defendant" or "NH Special Events"): (1) a Motion to Dismiss Plaintiffs' Complaint (ECF No. 11); and (2) a Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25). The earlier filed motion (ECF No. 11) moved to dismiss the original Complaint (ECF No. 1). That motion (ECF No. 11) is now MOOT, as Plaintiffs AF1 Exhibit LLC and 475EV Assets, LLC (collectively, "Plaintiffs") subsequently filed an Amended Complaint (ECF No. 19). Through Defendant's later filed motion, NH Special Events seeks to dismiss all three counts of the Plaintiffs' Amended Complaint (ECF No. 19): the count for trespass to chattels (Count I), the count for conversion (Count II), and the count for negligence (Count III). Plaintiffs filed a response in opposition (ECF No. 30), and Defendant replied (ECF No. 35). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 11) is DENIED AS MOOT; and

Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25) is GRANTED IN PART and DENIED IN PART; specifically, it is GRANTED with respect to Count I stating a claim for trespass to chattels, and DENIED with respect to Plaintiffs' claims for conversion in Count II and negligence in Count III.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiffs' Amended Complaint (ECF No. 19), and accepted as true for the purpose of the Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25).

I.     **Factual Background**

### A. Agreement Between Plaintiffs and Franklin

At some point before August 13, 2018,[1] AF1 Exhibit LLC ("AF1") and 485EV Assets, LLC ("485V") entered into an agreement with Franklin Exhibits Management Group, LLC ("Franklin"). Pursuant to that Agreement, Franklin "would improve the interior and exterior" of a Boeing 747-212B freighter airframe (the "Airframe") owned by AF1 as well as four Pratt & Whitney JT9D-71 engines (the "Engines") and other equipment (the "Equipment") owned by 485EV. The purpose of these improvements was to build an authentic replica VA-25A airplane (the "Aircraft")—commonly known as "Air Force One"—and "display the Aircraft

---

[1] Neither the Amended Complaint (ECF No. 19) nor Plaintiffs' response (ECF No. 30) makes clear when Plaintiffs and Franklin entered into an agreement under which Franklin improved the interior and exterior of the Aircraft, though the Court presumes this agreement was made sometime before August 13, 2018.

as an interactive exhibit for educational purposes" (the "Air Force One Exhibit").  (ECF No. 19 ¶¶ 5–7.)  Plaintiffs allege that the Aircraft was valued over $6,000,000 after Franklin's improvements.  (*Id.* ¶ 8.)

### B.  License Agreement Between Franklin and Defendant

On or about August 13, 2018, Defendant NH Special Events entered into a License Agreement (the "License Agreement") with Franklin under which Franklin "received a license to exhibit" the Aircraft at a location within the National Harbor in Maryland (the "License Area").  (*Id.* ¶ 9.)  The initial license period commenced on or about August 12, 2018,[2] and terminated January 8, 2019 (the "License Period").  (*Id.* ¶ 10.)

Through the Amended Complaint, Plaintiffs allege that, because of its size, the Aircraft was "too large to be transported by other than by barge on waterways," and because only a "limited number of barges" are equipped to transport the Aircraft, removal "typically requires months of coordination."   (*Id.* ¶¶ 11–12.)   Anticipating that the eventual removal of the Aircraft from the National Harbor could present challenges, the License Agreement addressed the potential circumstances in which removal of the Aircraft from National Harbor could be delayed at the conclusion of the License Period in three ways.  (*Id.* ¶¶ 13–17.)  In brief, the License Agreement first provided that if Franklin was unable (i) to procure a barge, with unavailability proven to the reasonable satisfaction of NH Special Events, (ii) obtain necessary approvals from governmental and/or regulatory authorities despite diligent efforts to do so, or (iii) get reasonably full, clear and unrestricted access to the License Area for all manpower

---

[2]  The Amended Complaint inconsistently references the License Agreement's effective date.  (*Compare* ECF No. 19 ¶ 10 *with id.* ¶ 18.)  The Court assumes the reference to August 12, 2017 in paragraph 18 of the Amended Complaint is a scrivener's error, as the parties reference August 2018 in briefing the pending motion (ECF Nos. 25-1 at 2; 30-1 at 2.).

and equipment required to remove the Aircraft from the License Area, then Franklin had the option of extending the Air Force One Exhibit for up to four months for "$50,000 for each month's extension" (the "Extension Option"). (*Id.* ¶ 14.) Second, if Franklin "fail[ed] to surrender the License Area" (the "Unauthorized Holdover") then Franklin would be assessed an "Unauthorized Holdover Fee" fee of $1,500 per day, payable to NH Special Events upon demand, and Franklin "shall also remain liable to [NH Special Events] for damages arising out of said Unauthorized Holdover. (*Id.* ¶ 15.) Third, in the event of an Unauthorized Holdover, the License Agreement provided that NH Special Events could "exercise self-help and/or any and all other legal remedies to cause the removal of [Franklin], its property and personnel from the License Area." (*Id.* ¶ 16.)

### C. The Instant Dispute

The Air Force One Exhibit arrived at the National Harbor sometime in October 2018. (*Id.* ¶ 18.) After the Air Force One Exhibit did not perform as well as anticipated, (*id.* ¶ 21), Franklin decided not to renew the License Agreement and planned to move the Aircraft to a location in New York City. (*Id.* ¶ 21.) Nevertheless, after Franklin was unable to procure a barge to remove the Aircraft by January 8, 2019, Franklin decided to extend the term by an additional month (i.e., to February 8, 2019). (*Id.* ¶ 22.) Franklin subsequently paid an additional $50,000 to extend the term to March 8, 2019, but on February 1, 2019, NH Special Events told Franklin in a termination letter that the Agreement was terminated. (*Id.* ¶¶ 23–24.) NH Special Events returned the additional $50,000 and gave Franklin fourteen days to remove the Aircraft from the National Harbor. (*Id.* ¶¶ 24–25.) Through their Amended Complaint, Plaintiffs complain that fourteen days was an "unreasonably short period," and

4

that NH Special Events was well aware this was insufficient time for removal.  (*Id.* ¶ 25.)

Things deteriorated from there.  Plaintiffs allege that on or about February 22, 2019, NH Special Events "barred" Franklin from accessing the Aircraft and License Area.  (*Id.* ¶ 26.) Plaintiffs further allege that, by February 25, 2019, "it became clear that the tail of the Aircraft was becoming damaged by high winds."  (*Id.* ¶ 27.)  While Plaintiffs allege that Defendant initially denied Franklin access to the Aircraft to take steps to mitigate the damage, Plaintiffs allege that beginning on February 28, 2019, "and continuing for months," Defendant began providing "sporadic access" to Franklin's contractor.  (*Id.* ¶ 28.)  Still, Plaintiffs complain that Defendant "failed to give Franklin's contractor unfettered access to perform the necessary repairs, which frustrated Franklin's efforts to complete the repairs and remove the Aircraft." (*Id.*)

Plaintiffs allege that, while the repairs to the tail of the Aircraft were completed in September 2019, Franklin remained unable to remove the Aircraft "due to a piling under water."  (*Id.* ¶ 29.)  Plaintiffs allege that Franklin had previously informed Defendant of this piling, and while NH Special Events initially refused to have it removed, it eventually allowed Franklin to remove the piling in November 2019.  (*Id.*)  Also in September 2019, Franklin hired a contractor to perform a gas inspection, and according to Plaintiffs, NH Special Events "again refused to provide unfettered access to the Aircraft, which increased the cost to NH and further delayed the removal process."  (*Id.* ¶ 30.)  Plaintiffs further complain that, while NH Special Events allowed Franklin to access the Aircraft in February 2020, "the access was sporadic and further frustrated Franklin's efforts to remove the Aircraft."  (*Id.* ¶ 32.)

Plaintiffs allege that NH Special Events "began to threaten to dismantle the Aircraft"

beginning in October 2019.  (*Id.* ¶ 31.)  At some point during this saga, NH Special Events filed a "Complaint for Possession of Real Property against Franklin in the District Court of Maryland for Prince George's County."  (*Id.* ¶ 35.)  Plaintiffs were not included in the lawsuit. (*Id.*)  On October 20, 2019, NH Special Events "moved for permission to dismantle the Aircraft," which the state court denied.  (*Id.* ¶ 36.)  On February 28, 2020, the state court "issued an order authorizing the Sheriff to execute a Warrant for Restitution to 'evict' the Aircraft" (the "Order").  (*Id.* ¶ 37.)  The Order permitted NH Special Events to move the Aircraft to any of the following areas: (1) a waterfront ramp behind the License Area; (2) an empty, private parking lot adjacent to the License Area; or (3) to a public road in front of the License Area.  (*Id.* ¶ 37.)  NH Special Events subsequently removed the Aircraft from the License Area, though it is unclear when and where the Aircraft was relocated.  (*Id.* ¶ 38.)

Plaintiffs allege that on March 10, 2020, NH Special Events again demanded that Franklin remove the Aircraft within fourteen days, as well as "agree to a judgment against" the Aircraft, "release all claims against [Defendant]," and "other stipulations."  (*Id.* ¶ 33.)  On March 16, 2020, NH Special Events made another demand for Franklin to remove the Aircraft within fourteen days.  (*Id.* ¶ 39.)  Ultimately, Franklin was unable to arrange for removal.  (*Id.* ¶ 33.)  Plaintiffs complain that Franklin's efforts were frustrated by a Stay-at-Home Order issued by the Governor of Maryland in March 2020, due to the COVID-19 pandemic, as "numerous vendors" were "unavailable."  (*Id.* ¶¶ 40–41.)  On April 2, 2020, NH Special Events "falsely asserted that Franklin had abandoned the Aircraft" and advised Franklin it could no longer access the License Area.  (*Id.* ¶¶ 34, 42.)

The cycle of demands for and delays to removal continued.  On May 1, 2020, NH

Special Events again demanded that Franklin remove the Aircraft by May 22, 2020.  (*Id.* ¶ 43.)
Plaintiffs allege that, in response to Franklin's May 10, 2020 request for Defendant's
cooperation, (*id.* ¶ 45), NH Special Events responded by "stat[ing] that it had no obligation to
return the Aircraft or keep it at National Harbor for any length of time."  (*Id.* ¶ 46.)  On
May 11, 2020, Franklin stated that it had not abandoned the Aircraft and reiterated that it
intended to remove the Aircraft as soon as possible.  (*Id.* ¶ 44.)  On May 29, 2020, Franklin
"noted that Prince George's County was under a Local State of Emergency, but stated that it
would be prepared to inspect and photograph the Aircraft within 1–5 days of a Modified Phase
1 Reopening."  (*Id.* ¶ 47.)

On July 6, 2020, Franklin reiterated its intention to remove the Aircraft, again seeking
Defendant's cooperation.  (*Id.* ¶ 48.)  In response, Defendant told Franklin the Aircraft needed
to be removed from the National Harbor by August 18, 2020, or it would be "dismantled and
removed."  (*Id.* ¶ 49.)  On July 30, 2020, Franklin informed Defendant that it had "engaged a
contractor" and "sought confirmation that access to the Aircraft would be permitted."  (*Id.*
¶ 50.)

Between October 17, 2020, and February 9, 2021, the parties went back and forth
discussing "logistics of removing the Aircraft," with Defendant again threatening to dismantle
and remove the Aircraft if not removed by February 1, 2021.  (*Id.* ¶¶ 51–53.)  On
February 9, 2021, Franklin told Defendant that "Franklin remains committed to removing the
Aircraft from National Harbor and has been making extensive efforts to do so" and that it
"needs verification of the integrity of the Aircraft" following the "move of the Aircraft at
National Harbor."  (*Id.* ¶ 54.)  Franklin advised that: "Only when Franklin has this information

can it proceed with retaining a rigger and barge." (*Id.*) Ultimately, on February 15, 2021—two years after the License Agreement terminated and Defendant made its first demand that Franklin remove the Aircraft from National Harbor—NH Special Events informed Franklin it had dismantled the Aircraft and removed it from National Harbor. (*Id.* ¶ 56.)

## II.    Procedural History

On January 1, 2024, Plaintiffs initiated the instant lawsuit against Defendant.[3] (ECF No. 1.) Through the Amended Complaint (ECF No. 19), Plaintiffs allege one count for trespass to chattels (Count I), one count for conversion (Count II), and one count for negligence (Count III). On July 9, 2024, Defendant filed the instant Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs responded in opposition (ECF No. 30), and NH replied, (ECF No. 35). The Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25) is ripe for review.

## STANDARD OF REVIEW

### I.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

---

[3] Defendant filed a Motion to Dismiss (ECF No. 11) on May 21, 2024, but because Plaintiffs later filed an Amended Complaint (ECF No. 19), the previous Motion to Dismiss (ECF No. 11) is moot.

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## II.    Applicable Law for State Law Tort Claims

All of Plaintiffs' claims against the Defendant are state law tort claims, over which this Court has diversity jurisdiction. 28 U.S.C. § 1332. (ECF No. 19 ¶ 4.) "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). Maryland is the forum state.

The parties assume, without discussion, that Maryland law applies here. In tort actions,

9

Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred. *Ben-Joseph v. Mt. Airy Auto Transporters*, LLC, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648–49 (Md. 2007); *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006); *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). It is undisputed that any asserted wrongs occurred in Maryland. Accordingly, this Court applies Maryland law to Plaintiffs' claims.

## ANALYSIS

Through the Amended Complaint (ECF No. 19), Plaintiffs allege one count for trespass to chattels (Count I), one count for conversion (Count II), and one count for negligence (Count III). Through the Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25), Defendant seeks dismissal of all counts pursuant to Fed. R. Civ. P. 12(b)(6).

### I.     Count I: Trespass to Chattels

First, Defendant contends that Count I of the Amended Complaint fails to state a claim for trespass to chattels. In Maryland, a "trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (1965); *see also Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 697 (D. Md. 2011) (explaining that Maryland "rel[ies] heavily on the Restatement (Second) of Torts" in defining a trespass to chattel claim). As Judge Hollander of this Court has explained, "[t]o state a claim for trespass to chattels or conversion, a plaintiff must be entitled to rightful possession." *Griaznov v. J-K Techs., LLC*, No. ELH-16-2522, 2017 U.S. Dist. LEXIS 32780, at *33 (D. Md. Mar. 8, 2017) (citations omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 217.

Plaintiffs insist that Count I sufficiently pleads a claim for trespass to chattel because the Amended Complaint alleges that Defendant intentionally dispossessed Plaintiffs of the Aircraft. Section 221 of the RESTATEMENT (SECOND) OF TORTS—entitled "Dispossession"—provides that:

> A dispossession may be committed by intentionally:
> (a)  taking a chattel from the possession of another without the other's consent, or
> (b)  obtaining possession of a chattel from another by fraud or duress, or
> (c)  barring the possessor's access to a chattel, or
> (d)  destroying a chattel while it is in another's possession, or[4]
> (e)  taking the chattel into the custody of the law.

Plaintiffs emphasize Clause (c) of Section 221 of the RESTATEMENT (SECOND) OF TORTS, pointing to Comment e of Section 221. Comment e provides:

> A dispossession may take place by intentionally preventing the possessor from having access to a chattel. Thus where the actor by duress and intimidation forcibly prevents another from entering a warehouse for the purpose of removing his goods stored there, the other has been dispossessed of the goods. So too, one who is under a duty to admit to his land a possessor of a chattel who is seeking to obtain it has effectively dispossessed the other of his chattel if he refuses him access to it. Likewise, one who refuses to permit another to remove a chattel from the actor's land after the other's right or privilege to remain upon the land has expired, has dispossessed the other of the chattel. On the other hand, merely depriving the possessor of a chattel of a particular use of it is not a dispossession of the other.

RESTATEMENT (SECOND) OF TORTS § 221, Comment e.

Despite Plaintiffs' claims to the contrary, the Amended Complaint does not allege that

---

[4]  This Court finds it prudent to note that Clause (d) of the RESTATEMENT (SECOND) OF TORTS § 221 is inapplicable to the facts alleged. Comment f of Section 221 provides that: "The complete destruction of a chattel, as in the case of burning a paper, is a dispossession. There may, however, be liability for either trespass or conversion for material alteration of the chattel which changes its character, although it falls short of complete destruction." Thus, while Plaintiffs allege that Defendant "dismantled the Aircraft and removed it from National Harbor without Plaintiffs' consent," this cannot serve as the basis for Count I, as Plaintiffs do not allege that the Aircraft was "compete[ly]" destroyed.

Defendant "barr[ed] [Plaintiffs'] access to [the Aircraft]." RESTATEMENT (SECOND) OF

TORTS § 221(c). The Amended Complaint alleges that:

> Defendant precluded Franklin—"Plaintiffs' agent"—from accessing the Aircraft for five days beginning on February 22, 2019, with access resuming February 28, 2019, (ECF No. 19 ¶¶ 26–28, 58);

> "Beginning on February 28, 2019, and continuing for months," Defendant refused to provide "unfettered access" and rather provided "sporadic access" to Franklin's contractor to perform repairs to the Aircraft's tail, (*id.* ¶ 28);

> In September 2019, Defendant refused to provide "unfettered access" to Franklin's contractor to perform a gas inspection, (*id.* ¶ 30);

> Defendant provided Franklin "sporadic" access which "further frustrated Franklin's efforts to remove the Aircraft," (*id.* ¶ 32); and

> On April 2, 2020—more than a year after the contract terminated and Defendant demanded the Aircraft be removed from the National Harbor, and after a state court issued an order authorizing law enforcement to execute a warrant for restitution to evict the Aircraft—Defendant informed Franklin that its contractors were "no longer permitted to access the area where the Airplane is presently located," (*id.* ¶¶ 34, 37–38, 42).

The Amended Complaint proceeds to complain that "efforts" to remove the Aircraft from

National Harbor were frustrated by Defendant's lack of cooperation following the License

Agreement's termination in February 2019 and the limited availability of vendors after the

issuance of the March 2020 Stay-at-Home Order. (*Id.* ¶¶ 35, 40–41, 45, 47–48, 50.) Despite

Plaintiffs' claim to the contrary, the Amended Complaint does not allege that Defendant

refused to permit Plaintiffs to remove the Aircraft from National Harbor's property after the

License Agreement terminated. Rather, Plaintiffs' Amended Complaint makes clear that, for

over two years following the License Agreement's termination, Defendant implored

"Plaintiffs' agent" Franklin to remove the Aircraft from the National Harbor. Accordingly,

Count I of the Amended Complaint alleging trespass to chattels is DISMISSED WITH

PREJUDICE.

## II.    Count II: Conversion

Next, Defendant argues that Count II of the Amended Complaint fails to state a claim for conversion.  Conversion is defined as "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  RESTATEMENT (SECOND) OF TORTS § 222A(1); *see also Staub v. Staub*, 376 A.2d 1129, 1132 (Md. App. 1983); *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 835 (Md. 2004); *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (Md. 1985).

According to Defendant, the facts alleged in the Amended Complaint make clear "that NH [Special Events] did not want to own or possess the [Aircraft]," and as such, the claim for conversion must fail.  (ECF No. 25-1 at 9.)  As hinted to *supra* in footnote 4, Plaintiffs allegation that Defendant "dismantled the Aircraft" may serve as the basis for Plaintiffs' conversion claim.[5]  At bottom, Defendant's argument asks that the Court resolve the merits of this case, which is not appropriate at this juncture.  Accordingly, Defendant's Motion to Dismiss (ECF No. 25) is DENIED as to Plaintiffs' claim for conversion.

---

[5] "Conversion can be either direct or constructive." *Donegal Assocs., LLC v. Christie Scott, LLC*, 241 A.3d 1011, 1024 (Md. App. 2020) (citing *K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 982–83 (Md. 1989)). "Constructive conversion is predicated on possession by the defendant that was initially lawful or rightful." *K&K Mgmt.*, 557 A.2d at 983. "After rightful possession, however, conversion may occur if there is 'a wrongful detention of the goods and refusal to deliver them after due demand.'" *Donegal*, 241 A.3d at 1024 (quoting *Mattingly v. Mattingly*, 133 A. 625, 674 (Md. 1926). To establish constructive conversion, "it is necessary to show a demand for the return of the chattel by the rightful owner, and a refusal by the wrongful holder, or some assertion of an adversary right by the holder." *Durst v. Durst*, 169 A.2d 755, 756 (Md. 1961); *see also id.* (explaining that "[i]n the case of a direct conversion, the original taking is *per se* tortious and it unnecessary to show a demand and refusal"). The Court finds it prudent to note that Plaintiffs do not allege that Defendant "refus[ed] to deliver [the Aircraft] after due demand." *Donegal*, 241 A.3d at 1024 (quoting *Mattingly*, 133 A. at 674). Rather, the Amended Complaint makes abundantly clear that for over two years, Defendant requested the Aircraft's removal, and that for over two years, Plaintiff failed to facilitate its removal.

## III.    Count III: Negligence

Finally, Defendant argues that Count III of the Amended Complaint fails to state a claim for negligence.  To establish a prima facie case of negligence under Maryland law, a party must prove "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. On Target*, 727 A.2d 947, 949 (Md. 1999) (citations omitted).

The threshold requirement is the existence of a duty, "[f]or without a duty, no action in negligence will lie." *Evergreen Assocs., LLC v. Crawford*, 75 A.3d 1038, 1043 (Md. App. 2013) (citation omitted).  Through their Motion to Dismiss, Defendant argues that the Amended Complaint does not establish that NH Special Events owed Plaintiffs any duty, as there was no relationship between Defendant and Plaintiffs.[6]  In response, Plaintiffs argue that "Defendant had a common law duty to exercise reasonable care in undertaking self-help to dismantle and/or remove the Aircraft." (ECF No. 30-1 at 12.)  In support of this position, Plaintiffs cite to two cases dealing with self-help in the landlord/tenant and real property context. (*Id.* (citing *Donegal Assocs., LLC v. Christie Scott, LLC*, 241 A.3d 1011 (Md. App. 2020); *Laney v. State*, 842 A.2d 773 (Md. 2004)).  Plaintiffs' Aircraft was located at National Harbor pursuant to a License Agreement between Defendant and Franklin, and where—for over two years—Franklin failed to remove the Aircraft from National Harbor, despite Defendant's continuous demands that it do so.  At this stage, where the Court must take Plaintiffs'

---

[6]  While Plaintiffs do not allege that a contractual obligation existed between Plaintiffs and Defendant, the Court finds it prudent to note that under Maryland law, "a contractual obligation in and of itself generally does not create a tort duty" without an "independent duty." *Lawyers Title Ins. Corp. v. Rex. Title Corp.*, 282 F.3d 292, 293 (4th Cir. 2002).

14

allegations as true, the Amended Complaint sufficiently alleges a cause of action for negligence, as Plaintiffs allege that Defendant "had a duty to take reasonable measures to prevent damages to the Aircraft;" that Defendant breached that duty in "dismantling and destroying the Aircraft, rather than arranging for transportation of the Aircraft by barge;" and that Defendant's acts and omissions caused injury to Plaintiffs.   (ECF No. 19 ¶¶ 71–75.) Accordingly, Defendant's Motion to Dismiss (ECF No. 25) is DENIED as to Plaintiffs' claim for negligence.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 11) is DENIED AS MOOT; and Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 25) is GRANTED IN PART and DENIED IN PART.

A separate Order follows.

Dated: March 6, 2025                                    /s/
                                        Richard D. Bennett
                                        United States Senior District Judge